HARRY H. WIGGIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25071, 32539, 41272.   Promulgated March 14, 1930.

*Robert H. Montgomery, Esq.*, and *Melville F. Weston, Esq.*, for the petitioner.

*John D. Kiley, Esq.*, for the respondent.

OPINION.

SMITH: The sole question presented by these proceedings is the right of the petitioner to deduct from gross income in his income-tax returns for the years 1922 to 1925, inclusive, the net losses of the H. H. Wiggin Lumber Co., which the petitioner was required to make good and did make good to the H. H. Wiggin Lumber Co. under his agreements with that company. The petitioner claims the deductions as losses sustained by him under the provisions of section 214(a) of the Revenue Acts of 1921, 1924, and 1926, which provide, in so far as material, as follows:

(a) That in computing net income there shall be allowed as deductions:

\*   \*   \*   \*   \*   \*   \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*

The respondent has disallowed the deductions upon the ground that they represent additional investments of capital on the part of the petitioner in the corporation and are therefore not deductible losses.

At the hearing of these proceedings the petitioner was asked what the reason was for entering into the agreement dated November 2, 1922. He replied:

Well, the first was the fact that my stockholders could not or would not advance any more money to carry along the business during this depression and therefore feeling as they did about it, about dividends, I knowing what I supposed was much more than anybody else about the lumber business, having had experience in cost accounting and knew how lumber was bought and was manufactured, I had perfect faith in the business and felt that I would be able to pull it out with a profit each and every year. I therefore decided that it would be better for me, as I was very active in it to advance money to take care of it. Now, I might say there were two objects; the other object would be if I made money I would have a chance to pay tax, and if I didn't, why I would not. I suppose that was the two motives I had. I hoped, however, to pay taxes rather than lose money as I did.

In the first place, it is contended by the petitioner that the loss sustained by him during the taxable years was a loss "incurred in trade or business." He contends that a compensation agreement between a corporation and one who makes his living as a paid executive is entered into in the course of the latter's trade or busi-

ness; and, if under its terms a loss is sustained the loss is incurred in trade or business. In support of this contention the petitioner cites *Ernest E. Lloyd*, 8 B. T. A. 1029. The facts in that case were that the president of a corporation, whose directors declined to authorize expenditures upon a certain project in the corporation's behalf, agreed to advance the money himself, the same to be repaid to him if the project was successful. The project was not successful and he was held entitled to deduct as a loss over $5,000 which he had spent and for which he was not reimbursed. In our opinion we stated:

* * * We are further of the opinion that the loss was "incurred in trade or business" in that the furtherance of the business of the company of which he was president was legally and logically his business.

Petitioner also cites *Herschel V. Jones*, 1 B. T. A. 1226, and *Monroe Washer*, 12 B. T. A. 632.

The facts in the *Lloyd* case were substantially different from those which obtained in the instant proceedings. The petitioner had reason to expect that the project for which he had advanced the money would be successful and that the corporation would reimburse him for the money advanced. The *Jones* and *Washer* cases are distinguishable upon their facts and the decisions therein are not controlling in the proceedings at bar. Quite clearly the business of the H. H. Wiggin Lumber Co. was not the business of the taxpayer. The losses in the first instance were sustained by the H. H. Wiggin Lumber Co. By the agreement of November 2, 1922, the petitioner seeks to have the losses of that company deducted from gross income in his individual tax return. If the losses are deductible they are deductible by virtue of the agreement of November 2, 1922, and succeeding agreements covering the years 1924 and 1925. We think that in no proper sense were the losses claimed as deductions by the petitioner losses incurred by him in a trade or business carried on by himself.

Petitioner further makes the contention that the losses were incurred in a transaction or transactions entered into for profit. The facts are that the corporation was operating at a heavy loss. It had operated at a loss for 1921, and by November 2, 1922, it was apparent that it would operate at a loss in 1922. The agreement which was entered into on November 2, 1922, was apparently for the purpose of enabling the petitioner to deduct from his gross income the losses of the corporation. It is to be noted that the agreement covered a period of only two years. There is no reason to believe that the agreement was one from which the petitioner expected to realize a profit. It was rather to enable him to deduct from his own gross income the losses of the corporation. We are therefore of the opin-

ion that the losses sustained for the years 1922 and 1923 did not result from a transaction entered into for profit. We are likewise of the opinion that the extensions of that agreement to cover the years 1924 and 1925 were made merely to enable the petitioner to deduct from his gross income the losses of the corporation. We are led to this conclusion in part by the fact that as soon as the H. H. Wiggin Lumber Co. began to operate at a reasonable profit the agreements were not further extended.

It is further to be borne in mind that the petitioner owned a large majority of the stock of the corporation and that he and his immediate family owned over 98 per cent of the stock of the corporation. The corporation was entirely dominated by the petitioner and the agreements were not arm's-length transactions. In *M. I. Stewart & Co.*, 2 B. T. A. 737, we had before us the case of a stockholder who owned one-half of the stock of the taxpayer corporation and who, acting for himself and the owner of the remainder of the stock, acquired stock in another corporation and transferred it to the petitioner corporation, which credited the accounts of both stockholders with the par value of such stock. During the same year the petitioner corporation acquired directly additional shares of such stock and sold all of the stock to one of its stockholders for an amount much less than the cost thereof, who in turn delivered one-half of the stock to his co-stockholder. We held that this was not a *bona fide* sale upon which the taxpayer was entitled to claim a deductible loss. We said:

* * * In the case of corporations sales to stockholders in all cases are subject to special scrutiny and their good faith must be unquestioned. The principle of corporate entity can not be used to cloak a transaction which is essentially a fraud upon the public revenue.

We are of the opinion that the same principle controls the issue in the proceedings at bar.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

STERNHAGEN and MATTHEWS concur in the result only.